**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CAMPAIGN LEGAL CENTER
1101 14th Street NW, Ste. 400
Washington, DC 20005

DEMOCRACY 21
2000 Massachusetts Avenue, NW
Washington, DC 20036

          Plaintiffs,

    v.

FEDERAL ELECTION COMMISSION
1050 First Street, NE
Washington, DC 20463

          Defendant.

Civil Action No. _____

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.      This is an action under the Federal Election Campaign Act ("FECA" or "Act"), 52 U.S.C. § 30109(a)(8)(A), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), for illegal agency delay.

2.      Plaintiffs seek injunctive and declaratory relief to compel defendant Federal Election Commission ("FEC" or "Commission") to take action on plaintiffs' administrative complaint alleging violations of 52 U.S.C. § 30125(e), a FECA provision that prohibits any entity "established, financed, maintained or controlled by or acting on behalf of" a federal candidate from raising and spending funds that do not comply with the "limitations, prohibitions, and reporting requirements" of the Act, 52 U.S.C. § 30125(e)(1), *i.e.*, "soft money."

3.      Section 30125(e) strictly circumscribes a federal candidate's involvement with soft-money groups—such as federal independent expenditure-only political committees known as

"super PACs" that can raise funds outside FECA's contribution limitations—and prevents candidates from establishing or operating such groups as slush funds to support their campaigns.

4.     Plaintiffs filed an administrative complaint with the FEC on May 27, 2015—supplementing an earlier administrative complaint they filed March 31, 2015[1]—alleging that former Florida Governor John Elias "Jeb" Bush had violated 52 U.S.C. § 30125(e) by "establish[ing]," "financ[ing]," "maintain[ing]," and "controll[ing]," both directly and indirectly through his agents, the Right to Rise Super PAC, Inc.,[2] which "act[ed] on his behalf" by raising and spending soft money to promote Bush's presidential campaign. Ex. A, Admin. Compl. ¶ 1.

5.     The May 27 administrative complaint asked the Commission to find reason to believe that Bush violated section 30125(e) by raising and spending soft money for and through Right to Rise Super PAC, and that Right to Rise Super PAC violated section 30125(e) by raising and spending soft money on behalf of Bush, and to conduct an investigation to determine whether a violation had occurred or was continuing to occur. Ex. A, Admin. Compl. ¶¶ 1-2.

6.     FECA provides administrative complainants with a right of action against the FEC if the Commission fails to act on a complaint within 120 days. 52 U.S.C. § 30109(a)(8)(A).

7.     Four and a half years after plaintiffs filed their administrative complaints, there is no indication that the FEC has taken any action on them.

8.     This prolonged inaction has fostered a Wild West atmosphere in the financing of campaigns for federal office, allowing wealthy donors, including corporations and unions, to sidestep FECA's contribution limits and disclosure requirements by making unlimited

---

[1]   The May 27, 2015 and March 31, 2015 administrative complaints are attached hereto as Exhibits A and B, respectively.

[2]   Shortly thereafter, Right to Rise Super PAC filed an amended Statement of Organization changing its name to Right to Rise USA. *See* Right to Rise USA Statement of Organization, FEC (Jun. 12, 2015), https://docquery.fec.gov/pdf/367/15951468367/15951468367.pdf.

contributions to super PACs established, financed, maintained, or controlled by their favored federal candidates. Without enforcement of FECA provisions, such as section 30125(e), designed to prevent such circumvention of the contribution limits, "the integrity of our system of representative democracy is undermined." *Buckley v. Valeo*, 424 U.S. 1, 26-27 (1976) (per curiam).

9.      Plaintiffs have also suffered, because they, as well as the public, have been deprived of full disclosure about the activities undertaken by Bush and his agents to establish Right to Rise Super PAC, as well as the nature of the ongoing relationship between the super PAC and the Bush campaign. Plaintiffs lack information, for instance, about whether Right to Rise's expenditures should be deemed "coordinated" with the Bush campaign, or whether its contributors "earmarked" their money specifically for support of the Bush campaign. This is information to which plaintiffs are legally entitled under FECA.

10.     There is also reason to believe that Bush did not fully disclose his campaign activities as required by law, *see* 52 U.S.C. §§ 30102(e), 30103, 30104, and 11 C.F.R. § 101.3, both during the "testing the waters" phase of his campaign and after there was reason to believe Bush had moved beyond "testing the waters" to become a "candidate" under FECA. Ex. B, March Admin. Compl. ¶¶ 34-36, 49.

11.     By failing to act on plaintiffs' complaints, and exceeding by over four years the 120-day period prescribed by FECA for such action, the Commission has encouraged the use of candidate-controlled super PACs like Right to Rise as vehicles for the wholesale evasion of the contribution limits enacted to prevent *quid pro quo* corruption and its appearance.

**Jurisdiction and Venue**

12.     This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 52 U.S.C. § 30109(a)(8)(A) and 5 U.S.C. § 702. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

13.     Venue lies in this district under 52 U.S.C. § 30109(a)(8)(A) and 5 U.S.C. § 703.

**The Parties**

14.      Plaintiff Campaign Legal Center ("CLC") is a nonpartisan, nonprofit organization that works to strengthen American democracy through, among other activities, local, state, and federal efforts to ensure that the public has access to information regarding the financing of U.S. election campaigns.

15.     As part of this effort, CLC conducts research, authors reports and articles, and regularly provides expert analysis to the media. CLC also litigates throughout the country regarding campaign finance matters; files FEC complaints requesting that enforcement actions be taken against individuals or organizations that violate the law; participates in rulemaking and advisory opinion proceedings before the FEC to ensure that the agency is properly interpreting and enforcing federal election laws; and engages in legislative advocacy for reform measures at the federal, state, and local level.

16.     CLC relies on the accurate and complete reporting of campaign finance information to carry out activities central to its mission, including the production of reports and other materials to educate the public about campaign spending and the true sources and scope of candidates' financial support.

17.     CLC expends significant resources assisting reporters and other members of the media in their investigative research into candidates' financial support and relationships with

donors, to ensure that the public is equipped with the information necessary to evaluate different candidates and messages and to cast informed votes.

18.    CLC also uses its analyses of federal campaign finance disclosure information to support its administrative practice at the FEC and before state and local campaign finance agencies, and to defend campaign finance laws in its active docket of cases in federal and state courts.

19.    When inadequate disclosure of federal campaign finance activity makes it difficult to ascertain the origin or nature of a candidate's financial support, as occurs when a candidate's fundraising and other operations are illegally outsourced to an "independent" super PAC without full disclosure, reporters often contact CLC for guidance as to whether or where they can find the campaign finance information that is not being properly reported. This work requires CLC to divert resources and funds from other organizational needs.

20.    Plaintiff Democracy 21 is a nonprofit, nonpartisan organization dedicated to making democracy work for all Americans through support of campaign finance and other political reforms. To accomplish these goals, it conducts public education efforts, participates in litigation involving the constitutionality and interpretation of campaign finance laws, and engages in efforts to help ensure that campaign finance laws are properly enforced and implemented. It also participates in rulemaking and advisory opinion proceedings, and other administrative matters, at the FEC.

21.    Like CLC, Democracy 21 relies on the accurate and complete reporting of campaign finance information to carry out activities central to its mission, including its public education efforts, reports, and statements about campaign spending and the sources and scope of candidates' financial support. Democracy 21 also expends significant resources to assist members of the media with research into issues of campaign financing and the relationships between

candidates and donors to ensure the public is broadly and accurately informed on these matters. Democracy 21 also uses its analyses of federal campaign finance disclosure information to support its administrative efforts at the FEC, including its participation in advisory opinion and rulemaking proceedings, as well as the filing of administrative complaints, and also uses such disclosure information in litigation to defend the constitutionality of the campaign finance laws in court.

22.     When such disclosure information is unavailable, inadequate, or inaccurate, such as when candidates are allowed to use supposedly "independent" outside spending groups as de facto coordinated arms of their campaigns, it impedes the ability of Democracy 21 to fulfill its mission and causes Democracy 21 to divert resources and funds from other organizational needs in order to provide the public with accurate information about the facts and implications of how the financing of federal campaigns is occurring.

23.     Defendant FEC is an independent federal agency charged with the administration and civil enforcement of FECA. 52 U.S.C. § 30106(b).

**Background**

24.     On May 27, 2015, CLC and Democracy 21 filed a complaint with the FEC against respondents Jeb Bush and Right to Rise Super PAC, urging that the Commission find reason to believe a violation of 52 U.S.C. § 30125(e) had occurred and commence an investigation. The May 27 complaint supplemented an earlier complaint plaintiffs filed with the FEC on March 31, 2015, alleging that Bush had not complied with applicable contribution restrictions and disclosure requirements while "testing the waters" prior to officially announcing his candidacy. *See infra* ¶ 32.

25.     Plaintiffs' May 27 administrative complaint alleged that Bush, while holding himself out as a candidate for the Republican nomination for U.S. President, and Bush's agents,

established Right to Rise Super PAC in January 2015,[3] and thereafter both directly and indirectly financed, maintained, and controlled Right to Rise Super PAC in violation of 52 U.S.C. § 30125(e).

26.     Citing news reports, the administrative complaint detailed the involvement of Bush and his close advisors in "establishing" the super PAC. *See* Ex. A, Admin. Compl. ¶¶ 11-19. For example, Bush and his agents reportedly took a direct role in recruiting high-level staff for Right to Rise Super PAC, such as by installing Mike Murphy, one of Bush's top advisers, at its helm.[4]

27.     The administrative complaint also alleged that Jeb Bush directly or indirectly "controlled" and "maintained" the super PAC while a candidate for office, citing reports that, among other things, Bush's advisers were "overseeing the operations of" Right to Rise Super PAC,[5] that Bush attempted to delay a formal announcement of his candidacy to maximize his soft-

---

[3]     *See, e.g.*, Ex. A, Admin. Compl. ¶¶ 1, 9, 11 (citing Richard Costa, *Jeb Bush and His Allies Form Leadership PAC and Super PAC, both dubbed Right to Rise*, Wash. Post (Jan. 6, 2015), https://www.washingtonpost.com/news/post-politics/wp/2015/01/06/jeb-bush-forms-new-pac-right-to-rise; Peter Overby, *5 Years After 'Citizens United,' Super PACs Continue to Grow*, NPR (Jan. 13, 2015), https://www.npr.org/2015/01/13/377024687/five-years-after-citizens-united-superpacs-continue-to-grow; Alex Isenstadt, *Jeb Bush's $100M May*, Politico (May 8, 2015), https://www.politico.com/story/2015/05/jeb-bush-right-to-rise-super-pac-campaign-117753; Philip Rucker & Matea Gold, *Top Republican Strategists in Talks to Join Jeb Bush's Super PAC*, Wash. Post (Mar. 17, 2015), https://www.washingtonpost.com/news/post-politics/wp/2015/03/17/top-republican-strategists-in-talks-to-join-jeb-bushs-super-pac).

[4]     *See* Ex. A, Admin. Compl. ¶ 12 (citing Michael C. Bender, *Jeb Bush Promises 2016 Decision in 'Few Months,'* Bloomberg Politics (Mar. 18, 2015), https://www.bloomberg.com/news/articles/2015-03-18/jeb-bush-promises-2016-decision-in-next-few-months-; Rucker & Gold, *supra*; Maggie Haberman, *Bush Advisor May Skip Campaign to Work for 'Super PAC,'* N.Y. Times (Feb. 18, 2015), https://www.nytimes.com/politics/first-draft/2015/02/18/bush-adviser-may-skip-campaign-to-work-for-super-pac; Jim Rutenberg, *The Next Era of Campaign-Finance Craziness Is Already Underway*, N.Y. Times (Apr. 21, 2015), https://www.nytimes.com/2015/04/21/magazine/the-next-era-of-campaign-finance-craziness-is-already-underway.html; Thomas Beaumont, *Bush Preparing to Delegate Many Campaign Tasks to Super PAC*, Miami Herald (Apr. 21, 2015), https://www.miamiherald.com/news/nation-world/national/article19123962.html).

[5]     Ex. A, Admin. Compl. ¶ 11 (citing Rucker & Gold, *supra*). *See also id.* ¶¶ 12-15.

money fundraising for the super PAC,[6] and that Bush and Right to Rise Super PAC developed a division of labor between his official authorized committee and the super PAC to operate as a unified campaign effort.[7]

28.     The administrative complaint also alleged Bush and his agents "financed" Right to Rise Super PAC, and that Bush himself,[8] his advisors,[9] and members of his family[10] personally conducted fundraising for the super PAC.

29.     For example, Bush was reportedly the "Special Guest" at the "Right to Rise National Team Meeting" held in Miami at the end of April 2015. The invitation for that event established four tiers of supporters, with the highest tier reserved for those who contributed or

---

[6]   *See, e.g.*, Ex. A, Admin. Compl. ¶¶ 12, 16-18 (citing Beaumont, Bender, and Isenstadt, *supra*).

[7]   *See* Ex. A, Admin. Compl. ¶¶ 16-18 (citing Beaumont and Isenstadt, *supra*).

[8]   *See, e.g.*, Ex. A, Admin. Compl. ¶ 20 (citing Nicholas Confessore, *Lines are Blurred in Donor Event for Jeb Bush 'Super PAC,'* N.Y. Times (Mar. 12, 2015), https://www.nytimes.com/politics/first-draft/2015/03/12/lines-are-blurred-in-a-jeb-bush-super-pac-donor-event; Maggie Haberman, *Hillary Clinton to Jump Start Fund-Raising Efforts*, N.Y. Times (Apr. 29, 2015), https://www.nytimes.com/politics/first-draft/2015/04/29/hillary-clinton-to-jump-start-fund-raising-efforts; Matea Gold & Ed O'Keefe, *Never Before Have So Many People with So Much Money Run for President*, Wash. Post (Apr. 27, 2015), https://www.washingtonpost.com/politics/why-the-2016-gop-race-may-be-more-like-2012-than-the-party-hoped/2015/04/26/fff662c8-e9f9-11e4-9767-6276fc9b0ada_story.html). *See also id.* ¶ 23.

[9]   *See, e.g.*, Ex. A, Admin. Compl. ¶ 24 (citing Ben White, *Jeb Bush's $100 Million Problem*, Politico (Mar. 16, 2015), https://www.politico.com/story/2015/03/jeb-bush-fundraising-right-to-rise-116108).

[10]  *See, e.g.*, Ex. A, Admin. Compl. ¶ 26 (citing Patrick Svitek, *George P. Bush to Help Raise Cash for Dad's Super PAC*, Tex. Trib. (Mar. 9, 2015), https://www.texastribune.org/2015/03/09/george-p-bush-attend-fundraiser-dads-super-pac; Matea Gold & Ed O'Keefe, *George W. and Laura Bush to Appear at Fundraiser for Jeb Bush*, Wash. Post (Mar. 23, 2015), https://www.washingtonpost.com/news/post-politics/wp/2015/03/23/george-w-and-laura-bush-to-appear-at-fundraiser-for-jeb-bush; Ed O'Keefe, *In Fundraising E-Mail, Barbara Bush Says Jeb Bush 'Is Our Best Chance of Taking Back the White House in 2016,'* Wash. Post (Mar. 18, 2015), https://www.washingtonpost.com/news/post-politics/wp/2015/03/18/in-fundraising-e-mail-barbara-bush-says-jeb-bush-is-our-best-chance-of-taking-back-the-white-house-in-2016).

raised $500,000 by April 17, 2015. Bush reportedly told donors at the event that he had already "raised tens of millions of dollars for his allied super PAC."[11]

30.     Over the course of the 2015-2016 election cycle, the Right to Rise Super PAC spent over $86 million on behalf of Jeb Bush's presidential run.[12]

31.     With the exception of a single $108 expenditure, all of that spending occurred after the filing of the May 27, 2015 administrative complaint.[13]

**Administrative Proceedings**

32.     CLC and Democracy 21 first filed an FEC complaint against Bush on March 31, 2015, alleging that Bush failed to comply with the requirement that activities to "test the waters" for an eventual campaign for federal office be paid for with funds that comply with applicable FECA contribution limits and source restrictions, as per 11 C.F.R. §§ 100.72 and 100.131. The March 31 complaint further alleged that there was reason to believe Bush had moved beyond "testing the waters" to become a "candidate" under FECA, but failed to comply with the candidate registration and disclosure requirements established by 52 U.S.C. §§ 30102(e), 30103, and 30104, and 11 C.F.R. § 101.3. Ex. B, March Admin. Compl. ¶ 49.

33.     The FEC responded to the March 31, 2015 complaint with a letter of acknowledgement dated April 3, 2015 informing plaintiffs that the proceeding would be designated Matter Under Review ("MUR") 6927.

---

[11]   Ex. A, Admin. Compl. ¶ 20 (citing Confessore; Gold & O'Keefe, *Never Before*; and Haberman, *Clinton to Jump Start Fund-Raising*, *supra*).

[12]   *See Right to Rise USA: Targeted Candidates, 2016 Cycle*, Ctr. for Responsive Politics, https://www.opensecrets.org/outsidespending/recips.php?cmte=C00571372&cycle=2016 (last visited Mar. 11, 2020).

[13]   *See Independent Expenditures: Right to Rise USA (2015-2016)*, FEC, https://www.fec.gov/data/independent-expenditures/?committee_id=C00571372&two_year_transaction_period=2016&cycle=2016&data_type=processed&is_notice=true (last visited Mar. 11, 2020).

34.     CLC and Democracy 21 then filed the May 27 administrative complaint described in paragraphs 24-29 *supra*, alleging violations of 52 U.S.C. § 30125(e) by Bush and Right to Rise Super PAC. The FEC sent plaintiffs another acknowledgement letter, dated June 4, 2015, indicating that the May 27 complaint would be treated as a supplement to the March 31 complaint.

35.     Upon information and belief, the Commission has failed to act on plaintiffs' May 27, 2015 administrative complaint, or the March 31 complaint it supplemented, since it was filed more than four and a half years ago. The Commission's inaction has thus persisted well beyond the statutorily allotted 120-day response period, as indeed, it has failed to take action over a period more than ten times that length.

## CAUSES OF ACTION

### Count I: FECA, 52 U.S.C. § 30109(a)(8)(A)

36.     Plaintiffs repeat and reallege paragraphs 1-35.

37.     Defendant's failure to act on plaintiffs' administrative complaints within 120 days of their filing was contrary to law under 52 U.S.C. § 30109(a)(8)(A), which provides plaintiffs a cause of action for "a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed."

### Count II: APA, 5 U.S.C. § 706(1)

38.     Plaintiffs repeat and reallege paragraphs 1-37.

39.     By failing to act on plaintiffs' administrative complaints within 120 days of their filing, the FEC unlawfully withheld and unreasonably delayed agency action under 5 U.S.C. § 706(1).

**REQUESTED RELIEF**

WHEREFORE, plaintiffs request that this Court:

(1)     Declare that the FEC's failure to act on plaintiffs' administrative complaints was contrary to law under 52 U.S.C. § 30109(a)(8)(A);

(2)     Declare that the FEC has unlawfully withheld and unreasonably delayed agency action on plaintiffs' administrative complaints under 5 U.S.C. § 706(1);

(3)     Order the FEC to conform with this declaration within 30 days pursuant to 52 U.S.C. § 30109(a)(8)(C);

(4)     Award plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

(5)     Grant such other relief the Court may deem just and proper.

Dated: March 13, 2020                           Respectfully submitted,

                                                */s/ Tara Malloy*
                                                Paul M. Smith (DC Bar No. 358870)
                                                Tara Malloy (DC Bar No. 988280)
                                                Megan P. McAllen (DC Bar No. 1020509)
                                                CAMPAIGN LEGAL CENTER
                                                1101 14TH ST. NW, SUITE 400
                                                WASHINGTON, D.C. 20005
                                                (202) 736-2200

                                                Fred Wertheimer (DC Bar No. 154211)
                                                DEMOCRACY 21
                                                2000 Massachusetts Avenue N.W.
                                                Washington, DC 20036
                                                (202) 355-9600

                                                Donald J. Simon (DC Bar No. 256388)
                                                SONOSKY, CHAMBERS, SACHSE,
                                                ENDRESON & PERRY, LLP
                                                1425 K Street N.W., Suite 600
                                                Washington, DC 20005
                                                (202) 682-0240

                                                *Attorneys for Plaintiffs*