UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAMPAIGN LEGAL CENTER and DEMOCRACY 21**,<br><br>Plaintiffs,<br><br>v.<br><br>**FEDERAL ELECTION COMMISSION**,<br><br>Defendant,<br><br>**RIGHT TO RISE SUPER PAC, INC.**,<br><br>Intervenor-Defendant. | Case No. 20-cv-00730 (CRC) |

### MEMORANDUM OPINION

Before the Court is intervenor-defendant Right to Rise's ("RTR") motion to reconsider the Court's February 19, 2021 order granting RTR's motion to dismiss in part. RTR asks the Court to revisit its holding that plaintiffs Campaign Legal Center and Democracy 21 have standing to pursue their claim. Also before the Court is plaintiffs' motion for a default judgment against the Federal Election Commission ("FEC"). For the reasons described below, the court will grant RTR's motion for reconsideration, and, finding that it lacks subject matter jurisdiction, dismiss the case and deny plaintiffs' motion for a default judgment against the FEC.

**I.  Background**

A.  <u>Motion to Dismiss</u>

In early 2015, Campaign Legal Center and Democracy 21 filed two administrative complaints with the Federal Election Commission ("FEC"). The groups alleged that during the 2016 presidential election cycle, then-Florida Governor Jeb Bush and the Right to Rise super

PAC ("RTR"), failed to abide by various disclosure requirements under the Federal Election Campaign Act ("FECA"). Those complaints sat dormant for nearly five years without action from the FEC. In March 2020, plaintiffs brought this action, seeking declaratory and injunctive relief to compel the FEC to act on their complaints. RTR intervened as a defendant and moved to dismiss.

On February 19, 2021, the Court granted RTR's motion to dismiss in part and denied it in part. See Campaign Legal Ctr. v. Fed. Election Comm'n, 520 F. Supp. 3d 38 (D.D.C. 2021) (Cooper, J.) ("CLC"). The Court agreed with RTR that plaintiffs failed to state a claim under the APA. Because FECA provides an "alternative, comprehensive" scheme for judicial review, it "precludes review of FEC enforcement provisions under the APA." Id. at 50 (quoting Citizens for Responsibility and Ethics in Wash. v. FEC, 164 F. Supp. 3d 113, 119–20 (D.D.C. 2015) ("CREW") (Cooper, J.)). The Court additionally agreed with RTR that, to the extent plaintiffs sought a determination from the FEC that certain of RTR and Bush's expenditures were "coordinated," such a request is precluded by Wertheimer v. FEC, 268 F.3d 1070, 1075 (D.C. Cir. 2001). CLC, 520 F. Supp. 3d at 47.

However, the Court rejected RTR's argument that plaintiffs had not alleged an informational injury sufficient for Article III standing. Id. at 46. The Court reasoned as follows. The testing-the-waters provisions of FECA "permit would-be candidates to evaluate the feasibility of candidacy without triggering candidate status when the funds they raise or spend for that purpose exceed $5,000." Id. at 43. While potential candidates do not need to disclose that spending during the testing-the-waters phase preceding their candidacy, if they eventually become a candidate, FECA requires them to disclose all of those transactions in their campaign

committee's first report.  Id.[1]  If the would-be-candidate decides not to run, though, no disclosure is required.

Plaintiffs alleged that Governor Bush was testing the waters of a possible presidential run as early as January 2015.  Id. at 45.  But, Bush's first report as a candidate, filed on July 15, 2015, appeared to only disclose testing-the-waters spending going back to June 5, 2015.  This left the five or so months of testing-the-waters spending between January and June 2015 undisclosed.  See Pl's Resp. at 17, ECF No. 13.  Taking the plaintiffs' allegations as true—that is, that Bush engaged in various testing-the-waters activity as early as January 2015—it appeared Bush had failed to disclose months of spending that FECA required him to disclose in his campaign's first report.  520 F. Supp. 3d at 46.  This would constitute an informational injury sufficient for Article III standing.  See id. at 45–46 (citing Campaign Legal Ctr. & Democracy 21 v. FEC, 952 F.3d 352, 356 (D.C. Cir. 2020)).

B.  Motion for Reconsideration

On March 5, 2021, RTR moved for reconsideration.  RTR argued the Court had incorrectly applied the legal standard applicable to a motion under Fed. R. Civ. P 12(b)(6) to RTR's motion under Rule 12(b)(1).  RTR also claimed the Court's decision was mistaken as to standing, because "Governor Bush disclosed *all* his testing-the-waters activities on his presidential campaign's first campaign finance report."  Recon. Mot. at 2, ECF No. 19.  In support of that contention, RTR claimed Bush reported "$386,020.15 of testing-the-waters activity for the period January 2015 through June 2015 in his presidential campaign's first

---

[1] In its earlier ruling, the Court understood this to be plaintiffs' reading of the statute. Based on subsequent briefing, the Court now believes Defendant-Intervenor RTR shares this interpretation. See Reply at 5, ECF No. 22 (arguing that "the Bush campaign and Right to Rise timely reported the exact information FECA requires" for the period before June 2015); see also Transcript of Mot. Hearing at 5 (Apr. 20, 2021), ECF No. 27.

disclosure report," id. at 8, without citation to the report or any explanation of how that sum was derived. In the alternative, RTR sought an order certifying the Court's decision for interlocutory appeal.

In response, plaintiffs argued that RTR had "no basis for its assertion that all testing the waters activity at issue here was publicly disclosed," because it was not clear how RTR would know the full scope of the Bush campaign's testing-the-waters activities. Resp. at 9, ECF No. 21. Plaintiffs maintained that, although Bush "reported *some* portion of his testing-the-waters spending," there is no indication that "this reporting was remotely complete or accurate," given the extensive travel and fundraising done by Bush in the months before his candidacy was announced. Id. at 11.

C. Motion for Default Judgement

Plaintiffs separately filed a motion for default judgment against the FEC on March 26, 2021. Plaintiffs claimed that the FEC "failed to appear, answer, plead, or otherwise defend this action as required by the Federal Rules of Civil Procedure." Default Mot. at 1, ECF No. 23. RTR opposed the motion, arguing that default judgment was not appropriate because (in its view) the plaintiffs do not have standing and therefore cannot establish subject matter jurisdiction. Default Resp. at 1, ECF No. 24.

D. Motions Hearing

The Court held a hearing on the reconsideration motion on April 20, 2021. At the hearing, the Court invited the parties to address what specifically was disclosed in the Bush campaign's first report and for what time period. Transcript of Mot. Hearing at 2–3. It was only then that RTR pointed out—for the first time—that the testing-the-waters spending dated June 5, 2015 in Bush's first report was listed on that date because that was the date Bush became a

candidate. Transcript at 6. Under RTR's legal theory, spending during the earlier testing-the-waters phase became an in-kind disbursement to the campaign on the date the campaign was announced, because there was no campaign before then. Id. at 5–6. Counsel also explained that, underneath the disbursement date there was an earlier date listed, indicating the date that Bush actually paid the relevant vendor for the testing-the-waters expense. Id. Looking at this second date, some of this testing-the-waters spending seemed to occur as early as the summer of 2014. See e.g., Jeb 2016 Inc., 2015 July Quarterly Report, FEC Form 3P at 1675 (filed July 15, 2015; amended Jan. 31, 2016) (listing, as an example an "In-kind (TTW)" disbursement for communications consulting in the amount of $1875, with the date of disbursement listed as 06/05/2015 and the notes listing the date 7/11/2014).[2] The total amount of Bush's testing-the-waters activity from July 2014 to June 2015 now appeared to be roughly the $386,000 that RTR had claimed earlier.

    Counsel for the plaintiffs agreed with RTR's reading of the forms. Transcript at 7. However, plaintiffs continued to argue that there had to be more than $386,000 worth of testing-the-waters activity during this time, given the widespread media coverage of Bush's travel before his candidacy was announced, and the fact that the reports still only showed a single testing-the-waters travel disbursement in the amount of $1,089. Id. at 10, 13. RTR responded by asserting that most of Bush's travel was done on behalf of RTR and was therefore paid for by RTR and disclosed in *RTR's* quarterly reports, not the campaign's. Id. at 11–12.

Because the parties had not, up until that point in the litigation, focused the Court's attention on particular instances of Bush's travel, the Court invited further briefing from the

---

[2] Form available at https://docquery.fec.gov/pdf/887/201507159000159887/201507159000159887.pdf. The Court may take judicial notice of publicly filed documents of this type.

parties on the matter. Id. at 23–25. The Court has received that supplemental briefing and the motions are ripe for the Court's consideration.

**II. Legal Standards**

 A. <u>Motion for Reconsideration</u>

Rule 60(b) authorizes a court to grant relief from an order in certain limited circumstances—based on "fraud," "mistake," or, "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), 60(b)(6). "It is well-settled that the party seeking relief from a judgment bears the burden of demonstrating that he satisfies the perquisites for such relief." <u>Green v. AFL-CIO</u>, 811 F. Supp. 2d 250, 254 (D.D.C. 2011). "Relief under Rule 60(b)(1) motions is rare," <u>Hall v. CIA</u>, 437 F.3d 94, 99 (D.C. Cir. 2006), and should only be granted when the movant shows the Court's order contains a clear or obvious error, <u>Douglas v. D.C. Hous. Auth.</u>, 306 F.R.D. 1, 5 (D.D.C. 2014). Although the moving party must demonstrate that it is entitled to relief under Rule 60, the court "is vested with a large measure of discretion in deciding whether to grant a Rule 60(b) motion." <u>Twelve John Does v. District of Columbia</u>, 841 F.2d 1133, 1138 (D.C. Cir. 1988).

 B. <u>Standing</u>

The plaintiff "bears the burden of proving by a preponderance of the evidence that the Court has subject-matter jurisdiction over her claims." <u>Schmidt v. U.S. Capitol Police Bd.</u>, 826 F. Supp. 2d 59, 69 (D.D.C. 2011) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)). To overcome a Rule 12(b)(1) motion, plaintiffs must show "by a preponderance of the evidence that the Court has subject matter jurisdiction to hear [the] case." <u>Biton v. Palestinian Interim Self-Gov't Auth.</u>, 310 F. Supp. 2d 172, 176 (D.D.C. 2004).

6

As this Court has already explained, a plaintiff can establish standing by demonstrating a denial of access to information "where a statute (on the claimants' reading) requires that the information be publicly disclosed and there is no reason to doubt . . . that the information would help them." CLC, 520 F. Supp. 3d at 45 (citing Campaign Legal Ctr., 952 F.3d at 356).

### III. Analysis

The crux of RTR's argument is that all the information FECA requires to be disclosed has already been disclosed in some format—either in Bush's reports or RTR's own reports. RTR Supp. Br. at 9, ECF No. 28. Therefore, according to RTR, plaintiffs do not lack access to any legally-mandated disclosures and have not suffered an informational injury.

Plaintiffs counter that RTR simply has no basis to know the full extent of Bush's testing-the-waters activity, and therefore RTR cannot credibly assert that all of Bush's pre-candidacy spending and travel can be accounted for in either Bush's or RTR's reports. Pl. Supp. Br. at 2, ECF No. 29. Plaintiffs further argue that RTR's reports do not account for all of Bush's travel or indicate which spending is associated with a particular instance of travel. Id. at 9–10. In support of this second argument, plaintiffs point to five instances of Governor Bush's reported travel that seem like testing-the-waters activity, yet do not appear to be linked to any recorded travel or lodging expenditures:

    a. A January 20, 2015 meeting in Washington between Bush and "Republican lobbyists." Pl. Supp. Br. at 4.

    b. Bush's February 27, 2015 speech at CPAC. Id. at 5.

    c. The March 7, 2015 Iowa agricultural summit. Id.

    d. A March 27, 2015 "Chamber of Commerce breakfast meeting" in Greenville, South Carolina. Id.

    e. The May 16, 2015 annual Lincoln Dinner hosted by the Iowa Republican Party. Id.

Plaintiffs maintain that Bush's reported testing-the-waters spending simply does not account for all of this (and other) pre-candidacy travel. Id. at 6–7. Plaintiffs point to the single testing-the-waters disbursement for travel and lodging (amounting to only $1,089) listed in Bush's report as evidence that the reporting is incomplete. Id. at 7.

RTR now claims that much of the spending plaintiffs are looking for is reflected in *its* FEC reports. RTR originally asserted in earlier rounds of briefing that "Governor Bush disclosed all of his spending for the purpose of testing-the-waters on his campaign's first FEC report," without citation to any report, or any other documentation that would support this contention. Reply Br. at 6, ECF No. 15. In its supplemental briefing, however, RTR explains, in significantly more detail than it did previously, where the spending for each of the instances of travel that plaintiffs list can be found in RTR's own reports.[3]

For instance, in connection with the "DC bundler event" on January 20, 2015, RTR disclosed a $12,159 disbursement related to catering expenses. RTR Supp. Br. at 12. RTR also listed three disbursements for airfare ($1,065, $2,273, and $2,660, respectively), dated March 6 and 7, 2015. Id. at 14–15. RTR maintains that these records show payment for Bush's travel to and from the March 7 event in Iowa. Id. at 15. Similar expenses for lodging and airfare are listed in RTR's reports for the March 17 South Carolina breakfast event and the May 16 Iowa dinner. Id. at 15–16.

Plaintiffs respond that this reporting is still "demonstrably incomplete" because it reflects only one $1,089 disbursement for travel over the 13-month period during which Bush was

---

[3] In RTR's view, it sponsored Governor Bush's participation in these events "because Right to Rise Leadership PAC was the beneficiary of the activity," and therefore it was required to list the expenses on its reports. Supp. Br. at 11–12; see also id. at 17 ("When Governor Bush attended either Right to Rise or Right to Rise Leadership PAC events, those committees paid for expenses related to his travel because Bush's travel and attendance *benefitted the committees*.").

testing the waters, "despite dozens of known trips and events during that time." Pl. Supp. Br. at 7. After hearing from counsel at the motion hearing and upon review of the supplemental briefing, however, the Court now agrees with RTR that the spending related to the four campaign events plaintiffs identified has been fully disclosed.

As for CPAC, RTR does not claim to have any expenditures related to Governor Bush's attendance on February 27, 2015. RTR Supp. Br. at 13. RTR argues that CPAC, and the events Bush attended there, were sponsored and paid for by other organizations and that Bush's attendance at CPAC was not testing-the-waters activity. Id. at 14. In support of this claim, RTR provides a declaration from Bush's director of scheduling, attesting that Bush attended an event at CPAC sponsored by the College Republicans on February 27. RTR Supp. Br. 16, Ex 1. RTR also cites news sources showing that Bush's speech at CPAC was at an event hosted, and presumably paid for, by the American Conservative Union. RTR Supp. Br. 13–14 & n.11–12. While this does not definitely prove that those groups paid for and disclosed the relevant CPAC expenses, in the absence of any evidence to the contrary from plaintiffs, it is enough to defeat their claim to standing.

Furthermore, plaintiffs are unable to point to other instances of Bush's pre-candidacy travel aside from the five events listed above. While it is true that the plaintiffs do not need "to identify in granular detail each and every campaign expenditure" that is missing, Pl. Supp. Br. at 8, ECF No. 29, plaintiffs must show "by a preponderance of the evidence" that this Court has standing to hear the case, Biton, 310 F. Supp. 2d at 176. It is not enough for the plaintiff to rest on "bare legal conclusions [or] unsupported inferences." Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).

The Court is convinced—with the benefit of RTR's belated explanation of both its and Jeb 2016's reports—that the expenses for Bush's travel and lodging in connection with those five events have been disclosed.[4] Plaintiffs have not identified any other pre-candidacy events, travel, or speaking engagements from which the Court could infer the existence of still-undisclosed spending. Without such allegations, the complaint does not contain more than the "unsupported inference" that there is more spending to be disclosed. Plaintiffs therefore lack standing to advance their claim under FECA.

## IV. Default Judgment

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment where a defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). When the default judgment sought would be against the United States, its officers, or its agencies, the claimant must establish "a claim or right to relief by evidence that satisfies the court." Fed. R. Civ. P. 55(d).

RTR argues that plaintiffs cannot establish a right to relief because the Court lacks jurisdiction to adjudicate their claims. The Court agrees. Because the Court has reconsidered its prior order and determined that the plaintiffs do not have standing, their default judgment motion must be denied. See Herbin v. Seau, 317 F. Supp. 3d 568, 571 (D.D.C. 2018); Strong-Fisher v. LaHood, 611 F. Supp. 2d 49, 52 n.2 (D.D.C. 2009).

---

[4] Whether or not this pattern of spending amounts to a violation of FECA's soft-money prohibition, as plaintiffs argue, does not alter the standing analysis. As this Court already decided, plaintiffs are not entitled to a "legal conclusion that carries certain law enforcement consequences." CLC, 520 F. Supp. 3d at 47 (quoting Wertheimer, 268 F.3d at 1075).

V.  **Conclusion**

For the foregoing reasons, the Court will grant RTR's Motion for Reconsideration. Having found a lack of standing, the Court will dismiss the case for want of jurisdiction. The Court will accordingly deny plaintiffs' motion for a default judgment against the FEC. A separate Order shall accompany this memorandum opinion.

CHRISTOPHER R. COOPER  
United States District Judge

Date:  December 30, 2021